*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
ATLANTIC SHORE SURGICAL :
ASSOCIATES, :
 :
              Plaintiff, :   Civil Action No. 17-cv-07534 (FLW) (DEA)
 :
    v. :
 :   **OPINION**
HORIZON BLUE CROSS BLUE SHIELD :
OF NEW JERSEY, ADMINISTRATORS :
and HEAVY AND GENERAL :
LABORERS' LOCAL 472 AND LOCAL :
172 WELFARE FUND OF NEW JERSEY, :
JOHN AND JANE DOE 1-10, AND ABC :
CORPORATIONS 1-10, :
 :
              Defendants. :
_____:

**WOLFSON, United States District Judge:**

    Currently before the Court are two separate Motions to Dismiss filed by Horizon Blue Cross Blue Shield of New Jersey ("Horizon") and Heavy and General Laborers' Local 472 and Local 172 Welfare Fund's (the "Fund"), respectively.[1] Plaintiff Atlantic Shore Surgical Associates ("Atlantic" or "Plaintiff"), a healthcare provider, brings this suit to recover certain payments incurred from a medical procedure that Plaintiff performed on patient "JB," an insured under the Fund's employee health insurance plan (the "Plan"), administered by Defendant Horizon. The Complaint, which was removed from state court, asserts the following state common law claims: (Count 1) breach of contract; (Count 2) promissory estoppel; (Count 3) account stated; and (Count 4) fraudulent inducement. Defendants move to dismiss Plaintiff's

---

[1] Collectively, "Defendants."

1

Complaint in its entirety, arguing that all of Plaintiff's state law claims are preempted under the Employee Retirement Income Security Act ("ERISA"), and that the Plaintiff lacks standing to sue under ERISA. Plaintiff cross-moves for remand, contending that the case was improperly removed because ERISA preemption does not apply.

For the reasons expressed herein, Defendants' Motions to Dismiss are granted, and the Complaint is dismissed in its entirety. The Court need not reach Plaintiff's Motion to Remand, as that motion is denied as moot.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Atlantic is a healthcare services provider organized and operating under the laws of the State of New Jersey. Certification of Colin M. Lynch, Esq., ("Lynch Cert.") Exhibit "A" at ¶ 1 ("Complaint"). The Fund, which maintains offices and conducts business in New Jersey, operated and acted as plan sponsor and/or administrator of an employee health welfare plan. *Id.* at ¶ 2. The terms of the Plan are governed by ERISA. Certification of Beverly Ceaser, dated October 16, 2017 ("Oct. 16 Ceaser Cert."), Exhibit A (the Plan) at 89. Horizon acted as the plan and/or claims administrator for the Plan. Compl., at ¶ 5.

The current dispute centers around Atlantic's request to be reimbursed for a medical procedure, a Laperoscopic sleeve gastrectomy, that it performed on a patient, "JB," on February 22, 2016. *Id.* at ¶ 18. JB, at all relevant times, received health insurance coverage through his employer from the Plan. *Id.* at ¶ 17. Atlantic is an out-of-network provider and was not a participant in the Plan. *Id.* at ¶ 16. The Fund provides an out-of-network benefit, which is subject to a deductible and paid at a fraction of the Plan's fee schedule. Oct. 16 Ceaser Cert. at 36.

On February 18, 2016, prior to performing the procedure on JB, Atlantic contacted Horizon to request prior authorization for the surgery. Compl. at ¶ 26. Horizon granted the pre-authorization request. *Id*. This precertification authorization agreement states in relevant part:

> This authorization determines the medical necessity of the services requested that require authorization are based upon the information provided. It is NOT a guarantee of payment. It is issued subject to the terms and the limitations of your agreement and the member's benefit plan, and subject to the member being eligible at the time services were provided…. *See* Certification of Beverly Ceaser, dated December 1, 2017 ("Dec. 1 Ceaser Cert."), Exhibit A (Precertification Agreement).

After the procedure, Atlantic billed Horizon $38,171.84, which according to Atlantic, "represents normal and reasonable charges for the complex procedure performed by a Board Certified Surgeon practicing in New Jersey with the aid of an assistant surgeon." Compl., at ¶ 23. Horizon, however, refused to cover the full amount, only reimbursing Atlantic a total of $2,840.00, leaving a balance due of more than $35,000.00. *Id*. at ¶ 24. Atlantic alleges that this payment "represents a gross underpayment and does not comport in any way with usual, customary or reasonable payments for the type of service rendered." *Id*. at ¶ 25. Plaintiff alleges that Horizon was aware that Atlantic was an out-of-network provider, but never disclosed "that payments made for the procedures would be denied in full or paid far below the usual and customary rates for these services." *Id*. at ¶ 27.

On August 29, 2017, Atlantic filed a Complaint against the Fund and Horizon in the Superior Court of New Jersey, Law Division, Ocean County. Lynch Cert., Ex. A. In its Complaint, Atlantic asserts only state common law causes of action against Defendants: (1) breach of contract; (2) promissory estoppel; (3) account stated; and (4) fraudulent inducement. *Id*. at ¶¶ 28–51. In essence, Atlantic alleges that the "dispute arises out of the defendants' refusal to pay [Atlantic] the money to which it is entitled for providing necessary medical services to patient, 'JB.'" *Id*. at ¶ 15. Atlantic further alleges that "[Horizon] induced plaintiff to provide the

3

medical services with the explicit knowledge that it never intended to pay the amounts it was obligated to pay." *Id.* at ¶ 27.

On September 27, 2017, the Fund filed a Notice of Removal to this Court claiming that Plaintiff's state law claims are completely preempted by ERISA because "Plaintiff's claims 'relate to' the terms of the Fund's benefit Plan." ECF No. 1 at ¶ 11. On October 16, 2017, the Fund filed a Motion to Dismiss Atlantic's Complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6) and for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 7. On October 17, 2017, Horizon joined in the Fund's motion and filed its own dismissal motion. ECF No. 8. On October 19, 2017, Plaintiff filed a Motion to Remand the matter to the Superior Court. ECF No. 10.

## II. 12(B)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### 1. Standard of Review

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation marks and citation omitted). While Federal Rule of Civil Procedure 8(a)6 does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the Complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the

speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,'…it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine whether a plaintiff has met the facial plausibility standard mandated by *Twombly* and *Iqbal*, courts within the Third Circuit engage in a three-step progression. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "outline[s] the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Finally, where "there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) *cert. denied*, 132 S.Ct. 98 (2011). Generally, when determining a motion under Rule 12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to

dismiss into one for summary judgment." *Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (quoting *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### 2. Express Preemption of Plaintiff's State Law Claims

Defendants argue that the Complaint should be dismissed because ERISA preempts all of Plaintiff's claims. Congress enacted ERISA to create "a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004); *see New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 303 (3d Cir. 2014) ("Congress enacted ERISA to ensure that benefit plan administration was subject to a single set of regulations and to avoid subjecting regulated entities to conflicting sources of substantive law."). "To ensure that plan regulation resides exclusively in the federal domain, Congress inserted in the statute an expansive preemption provision, codified at § 514(a)." *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 82 (3d Cir. 2012); *Davila*, 542 U.S. at 208 ("ERISA includes expansive pre-emption provisions,…which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'") (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Indeed, the Supreme Court has emphasized that ERISA possesses "extraordinary pre-emptive power." *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987); *see FMC Corp. v. Holliday*, 498 U.S. 52, 58 (1990) (noting that ERISA's "pre-emption clause is conspicuous for its breadth.").

Section 514(a), the express preemption provision of ERISA, provides that ERISA preempts "any and all State laws insofar as they…*relate to* any employee benefit plan" covered under the statute. 29 U.S.C. § 1444(a) (emphasis added). The Third Circuit has observed that the statutory phrase "relate to" "has always been given a broad, common-sense meaning, such that a

state law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 293–94 (3d Cir. 2014) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97 (1983)) (internal quotation marks omitted). The statute defines "State law" as "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State," 29 U.S.C. § 1144, and the Supreme Court has "emphasized that the pre-emption clause is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48 (1987) (quoting *Shaw*, 463 U.S. at 98). "State common law claims fall within this definition and, therefore, are subject to ERISA preemption." *Iola*, 700 F.3d at 83. For example, as relevant here, the Third Circuit has explained that claims for "reimbursement of previously paid health benefits," are claims for "benefits due," and thus are preempted by ERISA. *Levine v. United Healthcare Corp.*, 402 F.3d 156, 163 (3d Cir. 2005); *see also Early v. U.S. Life Ins. Co. in City of New York*, 222 Fed. Appx. 149, 151–52 (3d Cir. 2007) ("State law claims of bad faith and breach of contract ... ordinarily fall within the scope of ERISA preemption...."); *Pryzbowski v. U.S. Healthcare, Inc.*, 245 F.3d 266, 278 (3d Cir. 2001) (observing that "suits against .... insurance companies for denial of benefits, even when the claim is couched in terms of common law negligence or breach of contract, have been held to be preempted by § 514(a)."); *see, e.g., Ford v. UNUM Life Ins. Co. of Am.*, 351 Fed. Appx. 703, 706 (3d Cir. 2009) (holding that the plaintiff's state law claims for breach of contract, negligence, and intentional infliction of emotional distress were preempted under ERISA).

Nevertheless, the Supreme Court has cautioned that if the term "'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course…." *New York State Conference of Blue Cross & Blue Shield Plans v.*

*Travelers Ins. Co.*, 514 U.S. 645, 655 (1995). Thus, in *Shaw*, the Court explained that a "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." 463 U.S. at 96–97. In applying that test, courts "look to 'the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as to the nature of the effect of the state law on ERISA plans.'" *Iola*, 700 F.3d at 83–84 (quoting *California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc.*, 519 U.S. 316, 325 (1997)).

Here, Plaintiff asserts four state common law causes of action: (1) breach of contract;[2] 2) promissory estoppel;[3] 3) account stated;[4] and 4) fraudulent inducement.[5] In its breach of contract claim, Plaintiff alleges that Defendants created an implied in-fact contract by preauthorizing the surgery, thus agreeing to pay Plaintiff "usual and customary rates" for the procedure, which the Fund then breached when it did not reimburse Plaintiff at the customary rate. Compl., at ¶¶ 28–34. The promissory estoppel claim similarly alleges that, by preauthorizing the surgery,

---

[2] Breach of contract requires (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations. *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). "General contract law recognizes and enforces 'implied-in-fact' contracts," which "may be inferred wholly or partly from conduct." *Luden's Inc. v. Local Union No. 6 of Bakery, Confectionery & Tobacco Workers' Int'l Union of Am.*, 28 F.3d 347, 355 (3d Cir. 1994) (quoting Restatement (Second) of Contracts § 19(1) (1981)).

[3] Promissory estoppel requires, "(1) a clear and definite promise; (2) made with the expectation that the promise will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros., Inc., et al. v. Board of Chosen Freeholders of County of Burlington, et al.*, 194 N.J. 233 (2008).

[4] Account stated requires allegations of (1) an express or implied agreement as to the amount due and (2) the account was in fact stated or agreed to. *See Razor Enter. Inc. v. Aexim USA Inc.*, Case No. 11-6788 (ES), 2015 WL 790558 at *3 (D.N.J. Feb. 24, 2015).

[5] Fraudulent inducement, which must be pled with particularity, requires allegations of (1) a material representation of a presently exiting or past fact; (2) made with knowledge of its falsity; (3) with the intention that the other party rely thereon; (4) resulting in reliance by the party; (5) to his detriment. *RNS Sys., Inc. v. Modern Tech. Grp., Inc.*, 861 F. Supp. 2d 436, 451 (D.N.J. 2012).

8

Defendants made a promise to pay Plaintiff "at the usual, customary and reasonable rate," which Plaintiff relied upon "by spending valuable, time, resources and energy" performing the surgery. Compl., at ¶¶ 36–37. The account stated claim asserts that "[a]fter providing the medical services, which were authorized by defendants, plaintiff submitted bills and requests for payment to defendants in the sum total of $38,171.84," but "defendants, having acknowledged receipt of the bills, have paid a small portion, $2,840.00." Compl. at ¶¶ 41–42. Finally, for the fraudulent inducement claim, Plaintiff pled only that "defendant induced plaintiff to provide the medical services with the explicit knowledge that it never intended to pay the amounts it was obligated to pay." Compl., at ¶ 27.

In short, by disputing reimbursement for a procedure performed on a patient insured by an ERISA plan, Plaintiff asserts claims that are squarely within ERISA's ambit. Atlantic takes issue with the payment of the $2,840.00 that it received from Horizon for the surgery it performed on J.B., which is a fraction of the $38,171.84 that it claims it was owed. But as an out-of-network provider, Atlantic is automatically subject to the Plan's out-of-network benefit, which includes a deductible and authorizes payment at a lower rate than for in-network providers. Ceaser Cert. at ¶ 6. It is Atlantic's dispute with this out-of-network reimbursement payment, which is set forth in the terms of the Plan, that is at the center of its allegations. The Court thus cannot analyze Plaintiff's claims without referencing the Plan.

Examining Plaintiffs' claims individually makes clear that each one implicates the Plan's terms and thus "relates" to the ERISA Plan. Indeed, in its breach of contract, promissory estoppel, and fraudulent inducement claims, Plaintiff asserts that, by pre-authorizing the surgery, Defendants were bound to reimburse Plaintiff at a "usual, customary, and reasonable" rate. Compl. at ¶¶ 32, 36, 47. As discussed, however, the reimbursement rate that Atlantic must pay is

not dictated by reasonability or fairness, but rather by the Fund's out-of-network reimbursement rate.[6] For the third count, "Account Stated," Plaintiff does not specifically refer to the "usual and customary" rate but asserts that the Fund did not pay Plaintiff the amount due. However, to determine the amount actually due, the Court must reference the Plan's out-of-network reimbursement provision.

Nevertheless, Plaintiff attempts to argue that its claims are not preempted because they do not "relate" to the ERISA plan, but rather to the independent preauthorization agreement that Horizon gave Atlantic before it performed the procedure. For support, Plaintiff points to *Pascack Valley Hospital, Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). There, the court found that the plaintiff in-network hospital could pursue state law claims against an ERISA welfare benefit plan administrator for failure to pay for claims based upon an "independent" contractual obligation. In that case, the in-network hospitals, organized by an independent consultant, Magnet, Inc., had entered into a "Subscriber Agreement" that provided discounted rates to the plan administrator since hospitals did not contract directly with it. *Id*. This Subscriber Agreement expressly stated that "if Subscriber fails to pay within the appropriate time frame, the Subscriber acknowledges that it will lose the benefit of the MagNet discounted reimbursement rate and that Network Hospital is then entitled to bill and collect from Subscriber and the Eligible Person *its customary rate for services rendered*." *Id*. (emphasis added). The administrator did not pay within the appropriate time frame, and the hospital sued for breach of contract, demanding payment at its customary rate, as provided in the Subscriber

---

[6] It makes no difference that Plaintiff alleges in its fraudulent inducement claim that Horizon misrepresented the reimbursement rate in the preauthorization agreement in order to induce Plaintiff into agreeing to perform the procedure. To determine the appropriate reimbursement rate, reference to the terms of the plan is necessary.

10

Agreement. The court in *Pascack* concluded that the medical provider was seeking to enforce this agreement, rather than the plan itself, and as such a "resolution of this lawsuit requires interpretation of the Subscriber Agreement, not the Plan." *Id.* at 402. The court continued, "[t]he Hospital's right to recovery, if it exists, depends entirely on the operation of third-party contracts executed by the Plan that are independent of the Plan itself." *Id*.

Here, Plaintiff argues that Horizon, by agreeing to preauthorize the procedure, created a quasi-contract that bound Defendants to reimburse Plaintiffs at a reasonable and customary rate, much like the Subscriber Agreement independently bound the plan administrator in *Pascack*. But the purported contract—the preauthorization agreement—contains no reimbursement rate or any other provision dictating payment terms. In fact, it merely authorizes the provider to perform the procedure based on its medical necessity and unambiguously disclaims that it governs payment:

> This authorization determines the medical necessity of the services requested that require authorization are based upon the information provided. It is NOT a guarantee of payment. It is issued subject to the terms and the limitations of your agreement and the member's benefit plan, and subject to the member being eligible at the time services were provided .... *See* Dec. 1 Ceaser Cert., Ex. A.

Unlike in *Pascack*, this third-party agreement, even assuming it to be a valid contract, has no bearing on the dispute before the Court. The Subscriber Agreement in *Pascack* expressly stated that the administrator owed the hospital the customary rate because it missed its payment deadline. Contrary to Plaintiff's contentions, the agreement here lacks any promise of payment, much less any indication that payment would be at a usual and customary rate. Based on the facts alleged in the Complaint, no other agreement but the Plan contains this information. Indeed, the preauthorization expressly limits the authorization to, *inter alia*, "the member's benefit plan." Thus, unlike in *Pascack*, this Court can only resolve Plaintiff's claims by interpreting the Plan, not any independent contract, and Atlantic's right to recovery, if it exists, depends entirely on the

11

terms and provisions of the Plan, which sets forth the reimbursement rate for out-of-network providers such as in this case.

The other precedents that Plaintiff cites for support are equally unavailing because they too involve clear arrangements independent of an ERISA plan. *See, e.g.*, *Progressive Spine & Orthopedics, LLC v. Anthem Blue Cross*, No. 17–536, 2017 WL 4011203 at *3 (D.N.J. Sept. 11, 2017) (remanding case when plaintiff medical provider alleged that it had spoken to insurer "on three occasions," and the insurer's representative assured plaintiff that it would pay the "usual, customary, and reasonable" rate)*; Progressive Spine & Orthopedics. LLC v. Empire Blue Cross Blue Shield.*, No. 16-1649, 2017 WL 751851 at *9 (D.N.J. Feb. 27, 2017) (the plaintiff alleged that defendant had made a "verbal promise or agreement to pay the usual, customary, and reasonable rate of the procedures")*; Elite Orthopedic & Sports Med., PA v. Cigna Healthcare*, No. 16CV4775, 2017 WL 1905266, at *4 (D.N.J. Apr. 20, 2017), *report and recommendation adopted*, 2017 WL 1902162 (D.N.J. May 8, 2017) (involving instance in which plaintiff "alleged that it entered into separate contracts with [defendant], independent of any health care plans").

A more apt comparison than the cases cited by Plaintiff is *North Jersey Brain & Spine Center v. Connecticut General Life Insurance Co.*, No. 10-CV-4260, 2011 WL 4737063, at *3 (D.N.J. Oct. 6, 2011). There, the court denied the plaintiff out-of-network medical provider's motion to remand because its state common law claims were preempted by ERISA. The plaintiff brought claims for estoppel, unjust enrichment, and negligent and intentional misrepresentation against the defendant insurer alleging that it was underpaid for medical services it provided. Similar to the present case, the plaintiff attempted to argue that its claims related to a pre-certification agreement that obligated defendants to pay "the usual customary and reasonable fee," instead of the reimbursement rate set forth in the plan *Id*. at *3. The court ruled that the

12

plaintiff had "failed to show that its claims are not related to the terms of the…plan" because its claims seek "reimbursement of billed medical charges and relate to challenges to the administration' of benefits" under the plan. *Id.* Similar to this case, then, the court in *North Jersey* recognized that a run-of-the-mill pre-authorization agreement without clear contractual terms cannot replace the terms of an ERISA plan when a plaintiff makes a quintessential ERISA-type claim that essentially challenges the reimbursement of benefits.

Similarly, courts routinely find that state common law claims similar to the ones here alleging denial of benefits under an ERISA-governed plan are preempted. *See, e.g., Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 294 (3d Cir. 2014) (claims alleging breach of contract, bad faith, or negligence in connection with the denial of benefits under an ERISA-covered plan are preempted under ERISA, because those claims are "are premised on the existence of the plan"); *Estate of Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d 461, 468–69 (D.N.J. 2015) (finding that the plaintiffs' "claims for negligence and breach of contract 'relate[d] to' the Plan for purposes of ERISA preemption," because they were based on the denial of a claim for benefits under an ERISA-governed plan); *Majka v. Prudential Ins. Co. of Am.*, 171 F. Supp. 2d 410, 414 (D.N.J. 2001) (holding that ERISA preempted the plaintiff's claims that she "was entitled to long-term disability benefits under the terms of the Plan and that Prudential's failure to provide those benefits constituted breach of contract and of the duty of good faith and fair dealing."); *D'Alessandro v. Hartford Life & Acc. Ins. Co.*, No. 09–115, 2009 WL 1228452, at *2 (D.N.J. May 1, 2009) (finding that ERISA preempted the plaintiff's state law claims for breach of contract and bad faith denial of disability benefits, since "Plaintiff is essentially seeking to claim benefits under the long-term disability plan."); *Thomas v. Aetna Inc.*, No. CIV. A. 98-

13

2552, 1999 WL 1425366, at *8 (D.N.J. June 8, 1999) (finding that ERISA preempted plaintiff's fraudulent inducement claims).

For these reasons, all of Plaintiffs' claims are preempted by ERISA.

## III. 12(B)(1) MOTION TO DISMISS FOR LACK OF STANDING

Defendants also move to dismiss the Complaint because of Plaintiff's lack of standing. On a motion to dismiss for lack of standing, the plaintiff "'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *FOCUS v. Allegheny Cnty. Ct. Com. Pl.*, 75 F.3d 834, 838 (3d Cir. 1996) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "For the purpose of determining standing, [the court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

Standing to sue under ERISA is not limited to beneficiaries and participants, but extends to a *derivative provider*, an assignee of a plan participant, who may stand in the shoes of a party seeking to its enforce rights. *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). In cases where derivative standing is predicated upon an assignment of benefits under an ERISA plan, "failure to establish that an appropriate assignment exists is fatal to…standing." *Cmty. Med. Ctr. v. Local 464A UFCW Welfare Reimbursement Plan,* 143 Fed. Appx. 433, 436 (3d Cir. 2005).

Plaintiff pleads no facts to establish that a valid assignment occurred. Thus, Plaintiff cannot bring any ERISA claims for reimbursement, as it lacks standing to do so.[7] *See Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. CV154525, 2015 WL 6082299, at *3 (D.N.J. Oct. 15, 2015) (dismissing complaint at motion to dismiss stage in absence of allegations of assignment in the complaint); *see also Prof'l Orthopedic Associates, PA v. Excellus Blue Cross Blue Shield*, Mo. 14–6950, 2015 WL 4387981, at *5 (D.N.J. July 15, 2015) (same). In that regard, since it appears to have intentionally elected not to assert an assignment of benefits, Plaintiff will also not be given leave to file an amended complaint.

## IV. **MOTION TO REMAND**

Plaintiff seeks to remand the case to the Superior Court precisely because it lacks standing to sue in federal court having not pled that an assignment of benefits ever occurred. A defendant who seeks to remove a matter to federal court bears the burden of demonstrating jurisdiction, and the court must resolve factual disputes in favor of remand. *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004); *Entrekin v. Fisher Scientific, Inc.*, 146 F.Supp.2d 594, 604 (3d Cir. 2001). Pursuant to 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court." Ordinarily, whether removal is proper is to be determined by a review of the plaintiff's complaint: Under the well-pleaded complaint rule, a defendant may not remove a case unless a federal question appears on the face

---

[7] Plaintiff does not plead there has been an assignment and in fact argues that it does not have standing to sue in federal court. In Defendants' telling, this is an artful attempt by Plaintiff to avoid this Court's jurisdiction, and the Fund presents evidence that Atlantic did in fact agree to accept an assignment of benefits. Defendants' assertions of Plaintiff's motivation to avoid ERISA and the federal courts is not surprising in light of the case law. However, because I find that all of Plaintiff's claims are expressly preempted by ERISA, and therefore, dismiss the case in its entirety, I need not determine whether a valid assignment ever occurred.

15

of the plaintiff's complaint. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003); *Ry. Labor Executives Association v. Pittsburgh & Lake Erie R.R.*, 858 F.2d 936, 939 (3d Cir. 1988).

In contrast with the express preemption provision of ERISA, courts have also determined that even if a complaint does not raise any federal claims on its face, it may still be properly removable if it falls within the narrow class of cases to which the doctrine of "complete pre-emption" applies. *Pascack*, 388 F.3d at 400 (citing *Davila*, 542 U.S. at 208; *Metro. Life*, 481 U.S. at 66.). Because ERISA is among the areas of law subject to complete preemption, state law causes of action that are "within the scope of" ERISA are completely preempted and therefore removable to federal court. *Id.* (internal quotations omitted). To determine whether a case is removable, courts look to whether (1) the plaintiff could have brought its state law claims under ERISA's enforcement provision, and (2) no other legal duty independent of ERISA supports the plaintiff's claim. *Id.* at 400.

In the present case, the Court has already determined that ERISA expressly preempts each of Plaintiff's state law claims because they each "relate" to the ERISA Plan. As such, the Court need not decide whether Plaintiff could have brought its state law claims under ERISA's enforcement provision, a determination that requires evaluating whether a proper assignment occurred.[8] *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015). Thus, the Court denies Plaintiff's Motion to Remand as moot.[9]

## V. **CONCLUSION**

---

[8] As already discussed, Plaintiff cannot pass the second prong of the *Pascack* test because Horizon's preauthorization of benefits does not qualify as a legal duty independent of ERISA.
[9] The Court denies counsel's request for fees and costs associated with the removal of the matter. 28 U.S.C. § 1447(c) allows the court, in its discretion, to order the "payment of just costs and any actual expenses, including attorneys' fees, incurred as a result of the removal," upon "[a]n order remanding a case." Because Plaintiff's Motion to Remand is moot, an award of costs and fees is inappropriate.

For the foregoing reasons, Defendants' Motions to Dismiss the Complaint are granted.

Dated: May 31, 2018

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge